# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

LELAND SHEFBUCH,                          :

     Plaintiff,                       :
                       Case No. 3:14cv00133

 vs.                                     :

                       District Judge Walter Herbert Rice
CAROLYN W. COLVIN,                        :   Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                  :

     Defendant.                       :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    Introduction

Plaintiff Leland Shefbuch brings this case challenging the Social Security Administration's denial of his application for Disability Insurance Benefits. He asserts here, as he did before the administration, that he has been under a benefits-qualifying disability – starting on November 19, 2010 – due to diabetes, diabetic neuropathy, high blood pressure, arthritis, back injury, diabetic retinopathy, and an allergy to perfumes and strong odors.[2]

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] An unfavorable decision was issued on July 10, 2012.  (Exhibit 5-A).  The Appeals Council remanded the case for a new hearing and a new decision due to the fact the ALJ incorrectly determined the date last insured as March 31, 2012, instead of the correct date last insured of March 31, 2013.  The Appeals Council instructed the ALJ to consider any evidence through the date last insured.  A second administrative hearing was held on November 6, 2013.  The ALJ issued a new decision on November 22,

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #13), the administrative record (Doc. #5), and the record as a whole.

## II.   Background

### A.   Plaintiff's Testimony

Plaintiff testified at two administrative hearings.  The first occurred in June 2012, the second in November 2013.  (*PageID##* 58-120).  Testimony from both hearings are summarized below, with the date of specific testimony provided when applicable.

Plaintiff was 55 years old on his alleged disability onset date, placing him in the category of "advanced age" for purposes of resolving his claim for DIB.  *See* 20 C.F.R. § 404.1563(e).  He has a high school education.  He has past relevant work as a computer sales account manager, insurance sales person, apartment maintenance worker, automobile salesperson, and credit clerk.  (*PageID#* 51).

Plaintiff testified in June 2012 that he is 6' 5" tall and weighs approximately 285 pounds.  (*PageID#* 89).  He lives with his wife in a house.  (*Id.*). He can drive a car, but typically only drives 4 to 5 "short trips" per week.  (*PageID#* 90).  He worked in insurance sales from June 2006 until November 2010.  (*PageID#* 91).  He stopped working because he was unable to "get out and constantly drive the trips to and from the customer, the client's house.  It was just too long a trip."  (*PageID#* 92).  The average trip was

2013.  (*PageID##* 43, 52).

2

approximately 40 to 45 minutes. (*Id.*). He could not make the long trips because of back pain, leg pain, and numbness in his feet. (*Id.*). He got to the point where he was not even able to feel the pedals in his vehicle "a lot of times." (*Id.*). He has not performed any part-time or full-time work since then. (*Id.*). In addition to describing his issues with diabetes and blood pressure, (*PageID## 92-95*), Plaintiff also testified he has constant back pain that spreads into his legs. (*PageID# 95*).

Plaintiff testified in June 2012 that he had problems with his right shoulder and it was "sore." (*PageID# 97*). He went to the emergency room for this issue in April 2012 and was provided a sling. (*Id.*). He was told that "hopefully after six to eight weeks I would be able to move [my shoulder] somewhat." (*Id.*). Plaintiff was using the sling constantly until about a week prior to the hearing. (*Id.*). At the time of the hearing in June 2012, Plaintiff was using the sling about half the week. (*Id.*). He was "trying to use the shoulder to get some strength." (*Id.*). At his second hearing in November 2013, Plaintiff was still wearing a sling on his right arm. (*PageID# 62*). He testified his right shoulder still causes him severe pain. (*PageID# 65*). He is unable to lift his right arm level with his breast bone due to the pain. (*Id.*). Plaintiff also testified his doctor informed him he needed therapy, but when he found out he did not have any insurance "the whole discussion was stopped," and "no therapy scheduled, nothing done because I had no way to pay for it." (*PageID# 63*).

On a typical day, Plaintiff watches television, reads on his computer, sits on his porch, and spends time with his wife. (*PageID## 97-98*). He is able to grill small meals,

3

but does not do the dishes, sweep, or vacuum.  (*PageID#* 98).  Plaintiff goes to the grocery store approximately once or twice a week to pick up a couple items.  (*Id.*).  He goes to church every Sunday and might go to a friend's house once every 2 or 3 weeks, for "a few minutes."  (*PageID#* 99).  As to hobbies, Plaintiff testified "I've got old cars that I've collected that – I drive them five miles and park them and don't drive them.  It just – I might put 200 a miles a year on them."  (*Id.*).  Plaintiff also grows a couple tomato plants, but does not have a yard to care for as "[i]t's all concrete."  (*Id.*).

Plaintiff estimates he can walk for approximately 2 blocks at one time before needing to stop and rest.  (*PageID#* 100).  He can stand for "15, 20 minutes max before the neuropathy gets my legs burning."  (*PageID##* 73, 100).  If he sits for more than 10 to 15 minutes, he starts experiencing pain and some numbness.  (*PageID##* 73, 100).  In June 2012, he estimated he could only lift approximately 8 to 10 pounds, but just once or twice.  (*PageID#* 100).  At the hearing in November 2013, Plaintiff testified he would be unable to lift a gallon of milk out of the fridge with his right arm and pour a glass of milk.  (*PageID#* 68).  He used to be able to use his right arm "almost normal," but since the injury in April 2012 he is no longer able to lift anything heavy.  (*PageID#* 69).

## B.  <u>Medical Evidence</u>

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately

4

summarized the relevant records concerning Plaintiff's impairments with citations to specific evidence. The Commissioner likewise defers to the ALJ's factual recitation.

## III. "Disability" Defined and the ALJ's Decision

The Social Security Administration provides Disability Insurance Benefits (DIB) to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[3] 42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ James I.K. Knapp applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4). Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "(1) degenerative disk disease of the lumbosacral spine; (2) diabetes mellitus with neuropathy; (3) moderate obesity; and (4) environmental allergies . . . ." (*PageID#* 47).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of

---

[3] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

impairments did not meet or equal the criteria in the Commissioner's Listing of

Impairments, including Listing sections 1.02, 1.04, and 9.08.  (*PageID#* 48).

At Step 4, the ALJ concluded that Plaintiff lacked the residual functional capacity[4]

to:

> 1) lift more than ten pounds frequently and twenty pounds occasionally; 2) sit for more than one hour at a time without the opportunity for a short break or change in position (but otherwise unlimited up to a total of eight hours in a normal workday); 3) stand for more than one hour at a time or a total of six hours in a normal workday; 4) walk for more than fifteen minutes at a time or a total of two hours in a workday; 5) crawl, stoop below waist level, and climb stairs on greater than an occasional basis; 6) climb ladders or scaffolds; 7) work at unprotected heights or around moving machinery; 8) perform tasks that would involve concentrated exposure to fumes, smoke, dust, odors, or poor ventilation.

(*PageID#* 49).  The ALJ also concluded at Step 4 that Plaintiff's "allegations and

subjective complaints lack credibility to the extent that they purport to describe a condition

of disability for Social Security purposes through the date last insured."  (*PageID#* 51).

The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to

conclude that Plaintiff was not under a benefits-qualifying disability.

## IV.  **Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ

applied the correct legal standards and whether the findings of the ALJ are supported by

substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir.

2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[4] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.   **Discussion**

Plaintiff first argues the ALJ erred by failing to reasonably account for the injury to

7

his right shoulder rotator cuff in April 2012.  (Doc. #8, *PageID#* 701).  According to Plaintiff, the ALJ erred in finding that he does not actually have a rotator cuff injury based on the results of an x-ray.  (*Id.*, *PageID#* 702).  Plaintiff contends this failure – which resulted in no limitations attributable to his right rotator cuff injury being included in the ALJ's disability analysis – "renders the ALJ's ultimate non-disability finding unsustainable as the combined impact of all Plaintiff's severe and non-severe impairments must be considered throughout the entire disability determination process."  (citing 20 C.F.R. § 404.1523).  The Commissioner contends, "Plaintiff failed to prove he had a 'severe' impairment due to a rotator cuff injury or that, whether severe or not severe, it caused additional limitations on his ability to work."  (Doc. #10, *PageID#* 714).  According to the Commissioner, the ALJ properly determined the medical evidence failed to support a finding that Plaintiff's rotator cuff injury was a "severe" impairment.  (Doc. #10, *PageID#* 715) (citing Tr. 48, 49, 675, 678).

Plaintiff injured his right shoulder while moving a garbage can on April 28, 2012.  (*PageID#* 671).  He stated he heard a "pop."  (*Id.*).  He went to the emergency room two days later, complaining of shoulder pain.  (*PageID#* 673).  An x-ray was taken of Plaintiff's right shoulder and reviewed by the emergency room physician, Dr. Bryan T. Fitzgerald, D.O.  (*PageID#* 675).  Dr. Fitzgerald "saw no evidence of fracture dislocation or other bony abnormalities," and noted that from the x-ray, "[n]o soft tissue defects were evident."  (*Id.*).  Dr. Fitzgerald concluded Plaintiff had a rotator cuff injury and directed him to rest his shoulder in a cradle swing.  (*PageID#* 676).

8

A few months later, at his administrative hearing in June 2012, Plaintiff testified his shoulder was still sore, although he was attempting to use the sling less and use his shoulder more, "to get some strength."  (*PageID#* 97).  At his second administrative hearing – held in November 2013 – Plaintiff was still wearing a sling on his right arm. (*PageID#* 67). He testified he was wearing the sling about 2 to 3 days per week, "[b]ecause without it, the pain is severe."  (*Id.*).  Plaintiff testified he is unable to lift his right arm level with his breast bone.  (*PageID#* 65-66).  Trying to reach behind his back causes even worse pain.  (*PageID#* 66).  Plaintiff also testified that he was told by his doctor that he needed therapy, but "as soon as [the doctor] saw I had no insurance, the whole discussion was stopped.  There was no therapy scheduled, nothing done because I had no way to pay for it."  (*PageID#* 63).  Plaintiff testified that due to his right shoulder injury, he is not even able to lift a gallon of milk because, "I can lose the grip, my hand – you know, when you lift the weight, the pain hits.  You lose all the strength in your hand. You drop things constantly."  (*PageID#* 68).

In his decision, the ALJ discussed Plaintiff's right shoulder injury as follows:

The claimant has reported problems with his right shoulder since April 2012, but x-rays have shown only an osteophyte in the distal clavicle; there was no tears or soft tissue damage (Exhibit 13-F, pages 5-8).

. . .

Claimant sought emergency room treatment in April 2012 for complaints of right shoulder pain.  X-rays of the right shoulder showed an osteophyte, but were otherwise normal.  Claimant was initially felt to have a possible rotator cuff injury, and was treated conservatively by resting the joint in a sling, but test results supported no significant injury or abnormality (Exhibit 13-F).  There was one

9

follow-up visit in June 2012 finding a restricted range of motion but otherwise no treatment of the right shoulder. The impairment has not been found to be severe, and the restrictions found warranted in the initial decision remain applicable.

A review of the record indicates the ALJ erred by impermissibly supplanting his own lay medical analysis for the opinion of a medical expert. *Hall v. Celebrezze*, 314 F.3d 686, 690 (6th Cir. 1963) ("The ALJ may have expertise in some matters, but he does not supplant the medical expert."); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th Cir. 2009)(quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Perhaps one such reason why an ALJ should not "play doctor" is evidenced by the fact the ALJ in this case relied upon the results of an April 2012 x-ray of Plaintiff's shoulder to rule out the possibility that Plaintiff suffered any significant rotator cuff injury. As Plaintiff correctly notes, however, "x-rays do not visualize the soft tissues of the shoulder, such as the rotator cuff." (Doc. #8, *PageID#* 702)(citing *Rotator Cuff Tears,* American Academy of Orthopedic Surgeons (May 2011), http://orthoinfo.aaos.org/topic.cfm?topic=A00406, and *Rotator Cuff Testing*, WebMD, http://www.webmd.com/pain-management/picture-of-the-rotator-cuff); *see also Rotator cuff injury*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/rotator-cuff-injury/diagnosis-treatment/diagnosis/dxc-20128410, ("Although a rotator cuff tear won't show up on an x-ray, this test can visualize bone spurs or other potential causes for your pain – such as arthritis"). Magnetic resonance imaging (MRI) can reveal the

existence and severity of rotator cuff tears.  *See id.*

Accordingly, the ALJ erred by interpreting the results of an x-ray to rule out a significant rotator cuff injury in Plaintiff's right shoulder.  He further erred by determining that no vocational limitations were applicable in light of his unsupported finding.  As the ALJ's findings are not supported by substantial evidence, remand is warranted for proper consideration of Plaintiff's right rotator cuff injury and any resulting limitations.

For these reasons, Plaintiff's Statement of Errors is well taken.[5]

## VI.  <u>Remand is Warranted</u>

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*, 478 F3d at 746.  Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons

---

[5]  Plaintiff also argues the ALJ's findings regarding his diabetes and peripheral neuropathy related limitations are not based upon any medical evidence; the ALJ's findings regarding his past relevant work are unsupported; and, at a minimum, remand under Sentence Six of 42 U.S.C. § 405(g) is appropriate in light of examination notes from Dr. Hoover.  (Doc. #8, *PageID##* 703-706).  In light of the above review, and the resulting need for remand of this case, review of Plaintiff's remaining contentions is presently unwarranted.

supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence 4 of §405(g) due to problems set forth above. On remand, the ALJ should be directed to: (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for DIB.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The Commissioner's non-disability finding be vacated;

2.      No finding be made as to whether Plaintiff Leland Shefbuch
        was under a "disability" within the meaning of the Social
        Security Act;

3.      This case be remanded to the Commissioner and the
        Administrative Law Judge under Sentence Four of 42 U.S.C.
        § 405(g) for further consideration consistent with this Report;
        and

4.      The case be terminated on the docket of this Court.


June 4, 2015

                                                    _____s/Sharon L. Ovington_____
                                                    Sharon L. Ovington
                                                    Chief United States Magistrate Judge

13

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).

14